# IN THE COURT OF APPEALS OF IOWA

No. 20-1271
Filed January 21, 2021

**IN THE INTEREST OF T.R., A.R., L.C., and K.C.,**
**Minor Children,**

**A.R., Father,**
　　Appellant,

**T.M., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Madison County, Brendan Greiner, District Associate Judge.

Parents separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, for appellant father.

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Penny B. Reimer of the Neighborhood Law Group of Iowa, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MULLINS, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to their shared children, A.R. and T.R., born in 2012 and 2017, and the mother appeals the termination of her parental rights to two of her other children, K.C. and L.C., born in 2009 and 2010.[1]  The mother's rights were terminated pursuant to Iowa Code section 232.116(1)(a) (2020), and the father's rights were terminated pursuant to section 232.116(1)(j).[2]  The mother challenges the sufficiency of evidence supporting the statutory ground for termination and argues termination is contrary to the children's best interests due to the closeness of the parent-child bond.  The father claims he was not offered reasonable efforts at reunification, argues termination is contrary to his children's best interests, and requests the establishment of a guardianship in lieu of termination.

## I.     Background Facts and Proceedings

The unmarried parents and the four children came to the attention of the Iowa Department of Human Services (DHS) in early 2019 upon allegations the father was sexually abusing the older two children.  The children had initially disclosed the abuse to the mother, who took no action.  When the children reported it to their maternal grandmother with whom they were living in Colorado, she reported it.  The ensuing investigations by Colorado officials, which were completed in June, were founded, but the cases were closed and transferred to

---

[1] Guardianship and custody of the older two children was transferred to their father upon termination.  References to the father in this opinion are to the father of A.R. and T.R.  The other two children's father will be referred to as K.C.

[2] The State alleged several other grounds for termination of each parent's rights.  The court hung its hat on paragraphs (a) and (j) and did "not feel it [was] necessary to look further."

Iowa. The father was arrested the same month on three counts of second-degree sexual abuse.[3] At the time, the older two children were already residing with K.C., and the younger two remained with their maternal grandmother in Colorado. A no-contact order was issued prohibiting the father from contacting the mother or two older children. The mother requested the no-contact order be lifted as to her, stating her belief the father was innocent and her desire that he be able to have contact with his children.

The State filed child-in-need-of-assistance (CINA) petitions in early July. In mid-August, the State moved for formal temporary removal of the older two children from the mother's care upon reports the mother instructed the children to recant their allegations of sexual abuse against the father. The court entered an order for temporary removal and placed the children in the legal custody of K.C. under DHS supervision, which was confirmed following a hearing in late August.

Following an adjudication hearing in early October, the court adjudicated all four children as CINA under section 232.2(6)(c)(2) and (n) (2019). The court confirmed placement of the older two children and formally removed the younger two children, placing them in DHS's legal custody for placement in foster care in Iowa. The court noted its concern for allowing the mother visitation but allowed the mother two supervised visits per week. In mid-October, the State requested the mother's visitation with the older two children be at the discretion of DHS, alleging the mother was dishonest in her testimony at the adjudication hearing in

---

[3] The State's last amended trial information only charged two counts of second-degree sexual abuse.

regards to her communication with the father and that she then believed the father was innocent. Following a hearing, the court granted the motion.

The father bonded out of jail in November, but he did not meaningfully participate in services after he was released. As a result, DHS did not authorize him to have visits with his children. While the father requested visitation or contact with his children in some form at several hearings during the proceedings, he never completed the conditions that were requested of him by DHS to allow for visits.

The father's criminal trial was held in March, and a jury found him guilty on two counts of second-degree sexual abuse. It appears the father failed to appear for various days of the trial, including the final two, and a warrant issued for his arrest. He was apprehended a little over a month later. In June, the father was sentenced to two consecutive terms of imprisonment not to exceed twenty-five years, both with mandatory minimums of seventy percent, for a total minimum sentence of thirty-five years. In May, the mother was charged with one count of perjury, two counts of child endangerment, and two counts of accessory after the fact, in relation to the father's abuse of the children and the ensuing criminal case against him. Those charges were pending at the time of the termination hearing.

The mother continued to prioritize her relationship with the father over the children throughout the proceedings. At some point during the proceedings, K.C. and the children in his care moved to Colorado to be closer to the maternal grandmother. Prior to the termination hearing, the State moved for modification of placement of the other two children to the maternal grandmother upon the approved home study under the Interstate Compact for Placement of Children. All

parties agreed legal custody and placement with the maternal grandmother was proper, and the court entered an order to that effect.

The State filed its termination petition in July. Prior to the first of the two-day termination hearing in August and September, the mother submitted a written consent to termination of her parental rights, in which she, among other things, noted she "voluntarily, intelligently and for good cause, consents to the termination." At the first day of the termination hearing, the mother stated her desire to have her rights terminated because she believed termination to be in the children's best interests.

As noted, the juvenile court terminated the mother's rights under section 232.116(1)(a) (2020) and the father's rights under section 232.116(1)(j). The court rejected the father's reasonable-efforts challenge and his request for a guardianship in lieu of termination. The court found termination in the children's best interests and declined to apply statutory exceptions to preclude termination.

The parents separately appeal.

## II.     Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III. Analysis

#### A. Father

##### 1. *Reasonable efforts*

The father first claims the juvenile court "erred in terminating [his] rights pursuant to [section] 232.116(1)(j) as reasonable effort[s] were not provided to alleviate the reason for removal and to reunify the children with their father and reasonable efforts were not waived." The father specifically complains DHS disallowed him visitation for the entirety of the proceedings despite his alleged participation in recommended services.

DHS "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9). "A child's health and safety shall be the paramount concern in making reasonable efforts." *Id.* § 232.102(12). Our focus is on the services provided and the father's response, not on services he now complains were not provided. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). DHS need only provide those services that are reasonable under the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

While the father asserted in his testimony and on appeal that he participated in the services asked of him to facilitate visitation, we are unconvinced. The DHS requested the father to participate in therapy and provide a therapeutic recommendation that contact with his children would be appropriate. The father failed to do so. The father requested visitation at various hearings, but he did not follow through on any of the conditions for visitation. This circumstance, coupled with the heinous crimes the father committed against the other two children—which

the evidence suggests were committed in the same home and perhaps the presence of the younger children—renders denial of visits reasonable under the circumstances. We reject the father's reasonable-efforts challenge.

### 2.    Best interests

The father argues termination is contrary to the children's best interest, but he does not address the factors we consider in determining whether termination is in a child's best interests. Having given "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]," Iowa Code § 232.116(2), we conclude termination is in the children's best interests. The father will be in prison for at least thirty-five years, and the children will be decades into adulthood before he is released. Furthermore, the children are in a relative placement that is willing to adopt, has provided them stability, and meets their regular and special needs. Continued stability and permanency in this home are in this children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children).

### 3.    Guardianship

The father argues the court should have applied the exception to termination allowed to be applied when a relative has legal custody, *see* Iowa Code § 232.116(3)(a), and established a guardianship in the relative in lieu of

termination. *See id.* § 232.117(5) (authorizing the court, following a termination hearing, to enter an order in accordance with section 232.104 in lieu of terminating parental rights); *see also id.* § 232.104(2)(d)(1) (allowing for transferring of "guardianship and custody of the child to a suitable person"). We begin with the principle that "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Although section 232.104(2)(d) allows for the establishment of a guardianship as a permanency option, section 232.104(3) requires "a judicial determination that [such a] planned permanent living arrangement is the best permanency plan for the child." *See B.T.*, 894 N.W.2d at 32–33. Determining the best permanency plan for a child is a best-interests assessment, and we have already concluded termination is in the children's best interests. In addition, a guardianship, rather than termination, would not promote stability or provide permanency in these young children's lives. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody."). We find a guardianship would be contrary to the best interests of these young children.

B.    Mother

1.    *Sufficiency of evidence*

While the mother "acknowledges she filed a signed, consent to termination of parental rights," she argues "this consent was not given voluntarily and intelligently," as required by Iowa Code section 232.116(1)(a). She claims "the record is void of any proof, by clear and convincing evidence, [she] entered the

consent to termination voluntarily and intelligently." We disagree. Aside from the mother's written consent, she cogently testified at the termination hearing she believed termination to be in the children's best interests and she desired termination. We find nothing in the record to negate the voluntary and intelligent nature of the mother's consent, and we find the evidence sufficient to support termination under section 232.116(1)(a).

### 2.    Best Interests

Next, the mother contends termination is contrary to the children's best interests due to the closeness of the parent-child bond. Having given "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]," Iowa Code § 232.116(2), we conclude termination is in the children's best interests. The evidence suggests the mother knew the father was abusing two of her children, and when the children reported the same to the mother, she turned a blind eye. The mother has prioritized her relationship with the father over the safety and needs of her children. As noted in relation to the father's best-interests argument, the children are in stable relative placements that can provide them permanency and satisfy their needs; continued stability and permanency in these placements are in this children's best interests.

To the extent the mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), we conclude she failed to meet her burden to show "that the termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship[s]." *See A.S.,*

906 N.W.2d at 476 (noting parent challenging termination bears burden to establish an exception to termination).

## IV.     Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**